**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS,
EASTERN DIVISION**

| | |
|---|---|
| FUSION CAPITAL FUND II, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | Case No. 07C4543 |
| ) | Assigned Judge: Judge Shadur |
| ) | |
| MILLENIUM HOLDING GROUP, INC., ) | |
| RICHARD HAM and ) | |
| CARLA AUFDENKAMP, ) | |
| ) | |
| Defendants. ) | |

**<u>DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)6),
OR IN THE ALTERNATIVE, TO TRANSFER VENUE</u>**

Defendants Millenium Holding Group, Inc., Richard Ham and Carla Aufdenkamp ("Millenium"), by and through their counsel Jolley Urga Wirth Woodbury & Standish, hereby bring their Motion to Dismiss the Complaint brought by Plaintiff Fusion Capital Fund II, LLC ("Fusion") in the above-captioned matter pursuant to Fed. R. Civ. P. 12(b)(6) on the bases that (1) Fusion has failed to provide consideration for the agreement between the parties and cannot enforce the indemnity provision therein, and (2) under the law of the case, the Fusion-Millenium dispute did not arise out of the agreement between them, and thus the indemnity provision in that agreement does not apply. In the event Millenium's Motion to Dismiss is not granted, Millenium would in the alternative move this Court for a transfer of venue pursuant to 28 U.S.C. §1404. This Motion is based on the pleadings on file herein, the following Points and Authorities and any oral argument entertained by the Court at a hearing of this matter.

**I.**

**FACTUAL BACKGROUND**

1

The salient facts underlying the present lawsuit are not in dispute. Millenium is a publicly held Nevada corporation headquartered in Henderson, Nevada, and Ham and Aufdenkamp are officers of Millenium. In July, 2004, Millenium entered into a merger agreement with Sutura, Inc. (the "Sutura Agreement"), a manufacturer of medical devices. The Sutura Agreement, which Millenium executed in Nevada, provided that it would be governed by Nevada law.

As a condition to Sutura's obligation to consummate the merger, the Sutura Agreement required Millenium to enter into a funding agreement with a third party, which would purchase at least $15 million in Millenium securities. To fulfill the aforesaid condition, in late July, 2004 Millenium entered into a Common Stock Purchase Agreement (the "Fusion Agreement") with Fusion Capital Fund II, LLC, through its managing member Fusion Capital Partners LLC (collectively "Fusion"). The Fusion Agreement committed Fusion to buy up to $15 million worth of Millenium's common stock, and included an option for Fusion to purchase an additional $5 million worth of stock. Under section 1(b) of the Fusion Agreement, Fusion was to purchase $25,000 worth of stock per day, with this amount subject to increase or decrease. The Fusion Agreement also includes a forum selection clause, an attorneys' fees provision, and an indemnity clause, all of which are limited in scope to actions arising from the Fusion Agreement. A copy of the Fusion Agreement is attached hereto as Exhibit A.

Subsequent to the execution of the Fusion Agreement, Fusion advised Millenium that it would not provide financing for the Millenium/Sutura merger, and Sutura advised Millenium that it would not proceed with the merger. Fusion terminated the Fusion Agreement in November, 2004. Most importantly, Fusion did not purchase the Millenium stock as envisioned and required by the Fusion Agreement.

## II.

## PROCEDURAL HISTORY

Millenium filed its complaint against Sutura and Fusion on February 14, 2005 in Nevada state court, asserting claims against Fusion for intentional interference with contract and conspiracy. The case was removed to the Nevada Federal District Court (the "Nevada Court") on March 15, 2005. On March 22, 2005, Fusion submitted a motion to dismiss based on the forum selection clause of the Fusion Agreement. However, the Nevada Court ruled that as the Fusion-Millenium dispute arose in tort, the forum selection clause did not apply, and Fusion's motion to dismiss was denied by Order dated November 28, 2005. A copy of the Transcript of Proceeding for the hearing, November 8, 2005, is attached hereto as Exhibit B, and a copy of the order is attached as Exhibit C.

On March 12, 2007, Fusion filed in the Nevada Court a Motion for Summary Judgment on Millenium's claims against it and also moved for summary judgment on its own counterclaim for attorneys' fees against Millenium. By the Nevada Court's order of August 2, 2007, Fusion was granted summary judgment with respect to Millenium's claims. However, Fusion's motion for summary judgment on its own counterclaim for attorneys' fees was denied.

Rather than pursue an appeal of this decision or continue the pursuit of its attorneys' fees in the District of Nevada where the case had been litigated for more than two years, Fusion instead filed the present lawsuit in the Northern District of Illinois, Eastern Division, on August 13, 2007 (the "Illinois Complaint").[1]

### III.
### BASED ON FAILURE OF CONSIDERATION AND THE LAW OF THE CASE, FUSION HAS NO CAUSE OF ACTION FOR INDEMNITY AGAINST MILLENIUM, AND ITS CLAIM SHOULD BE DISMISSED.

**A.     Legal standard.**

On a motion to dismiss under FRCP 12(b)(6), a complaint should be dismissed where it appears beyond a doubt that the plaintiff can prove no set of facts that would entitle her to relief.

---

[1] Counsel for Millenium agreed to accept service of the Complaint and received the Complaint for the Illinois action on December 7, 2007.

3

Mattice v. Mem'l Hosp. of S. Bend, 249 F.3d 682, 684 (7th Cir. 2001). In the present case, the entirety of Fusion's Illinois Complaint relies upon enforcement of the indemnity provision of the Fusion Agreement. However, the indemnity provision does not apply to the Fusion-Millenium dispute, as the Nevada Court has already ruled that this dispute did not arise from or under the Fusion Agreement. Furthermore, as Fusion failed to follow through with the purchase of Millenium's stock as set forth in the Fusion Agreement, Fusion has failed to provide consideration for the Fusion Agreement, and Fusion is not entitled to indemnity from Millennium.2

**B.      Fusion has not provided consideration for Millennium's indemnity.**

The only substantive claim for relief brought by Fusion against Millennium in the Illinois action is for indemnity. Specifically, Fusion is claiming that Millennium is bound to indemnify Fusion for all attorneys' fees and costs incurred by Fusion in defending the underlying lawsuit brought by Millennium in Nevada. See Complaint at (paragraphs) 58-64. Fusion's claim for indemnity is based solely on Section 8 of the Fusion Agreement; however, Fusion has no right to enforce any provision of the Fusion Agreement, because Fusion has not provided any consideration for the Fusion Agreement. Indeed, as a result of the failure of Fusion's consideration, Millnenium is excused from performance of the Fusion Agreement at large, including any indemnity obligation.

Where there is a total failure of consideration, the non-breaching party is excused from performing its obligations under the contract. First National Bank of Belfield v. Burich, 367 N.W.2d 148, 152-153 (N.D. 1985) (citing Aberle v. North Dakota B & B Perm. & Tem. Per. Sys., 186 N.W.2d 446 (N.D. 1971)). A total failure of consideration will occur where a party has failed to perform a substantial part of its obligation, so as to defeat the very object of the agreement. Burich, 367 N.W.2d at 153; Lawrence v. Lawrence, 217 N.W.2d 792, 796 (N.D. 1974). Put another way, if

---

2  Though Fusion also asserts a claim for declaratory relief, requesting a piercing of the corporate veil and individual liability on the part of Ham and Aufdenkamp, this claim has no effect unless it is first found that Millenium bears liability to Fusion — which could only occur if Fusion is successful on the indemnity claim. Thus, as a practical matter, if the indemnity claim is dismissed, so too is the declaratory relief claim.

one party to a contract does not perform, it cannot require performance by the other party. As stated in <u>Aquagen Int'l, Inc. v. Calrae Trust</u>, 972 P.2d 411 (Utah 1998),

> When one party to a valid contract commits an "uncured material failure" in its performance of the contract, the non-failing party is relieved of its duty to continue to perform under the contract. Restatement (Second) of Contracts, § 237 (1981). This general rule is based on the principle "that where performances are to be exchanged under an exchange of promises, each party is entitled to the assurance that he will not be called upon to perform his remaining duties of performance with respect to the expected exchange if there has already been an uncured material failure of performance by the other party." Id. at § 237, cmt. b. We have unequivocally held in the past that "evidence of failure of consideration does not vary or alter the terms of a contract; it attacks the very existence of the contract for the purpose of proving it unenforceable." <u>Nielsen v. MFT Leasing</u>, 656 P.2d 454, 456 (Utah 1982). In fact, it is entirely permissible for a party to rescind a contract based on a failure of consideration. See id. at 457.

<u>Aquagen</u>, 972 P.2d at 414.

The Seventh Circuit Court of Appeals addressed a total failure of consideration in the context of a stock purchase agreement in <u>TMF Tool Co. v. Siebengartner</u>, 899 F.2d 584 (7th Cir. 1990). In <u>TMF</u>, TMF and Defendant RCS entered into an agreement whereby RCS would loan $500,000 to TMF, and TMF's principal, Kastory, agreed to sell majority ownership of his company to persons designated by RCS. When RCS failed to provide these funds, the agreement was revised so that TMF would sell stock to RCS' principal, Siebengartner, and two Swedish investors with whom Siebengartner was connected. Also, Siebengartner and the Swedes would loan TMF $350,000. TMF's principal transferred the TMF stock to Siebengartner. However, Siebengartner never paid for the stock, and also never forwarded to TMF's principal the stock proceeds advanced to him by Josephson and Moller, as required. In addressing this failure of consideration, the Seventh Circuit Court of Appeals stated as follows:

> In Count II of the complaint, plaintiffs ask to have the stock purchase agreement rescinded as against Siebengartner and RCS because payment for the TMF shares was never forwarded to plaintiff Kastory. The district court held that TMF could not have the stock purchase agreement rescinded because there had been no fraud. While it may be true that TMF was not defrauded, by the same token TMF never received any money for the sale of its stock. This amounts to a total failure of consideration --

5

> a situation which justifies rescission of the agreement as between TMF and Siebengartner.

Id. at 587 (internal citations omitted).

The applicability of failure of consideration to a right to contractual indemnity was also addressed in Seaboard Surety Co. v. Harbison, 304 F.2d 247 (7th Cir. 1962) as follows:

> 'Generally whatever would suffice as contract is sufficient on which to base a contract of indemnity. '42 C.J.S. Indemnity contract of indemnity.' 42 C.J.S. Indemnity §§ 6 (1944). 'As in the case of contracts generally, a contract of indemnity, whether in writing or not, may be void for want of consideration.' 27 Am.Jur., Indemnity, §§ 7 (1940). Substantive law of Indiana has long ago recognized that 'want of consideration' and 'failure of consideration are valid defenses to contracts in general. See cases cited in 8 West's Ind.Dig., Contracts 340-341 (1953).

Harbison, 304 F.2d at 250-251.

The entire purpose of the Fusion Agreement was for Fusion to purchase $15,000,000 worth of Millennium's stock. Of course, as admitted by Fusion in the Illinois Complaint, Fusion terminated the Fusion Agreement before purchasing the Millennium stock. As Fusion utterly failed to perform its end of the bargain, Fusion has failed to provide consideration for the Fusion Agreement. Without having provided consideration, Fusion has no right to enforce the Fusion Agreement against Millenium, including any right to indemnity set forth therein. Thus, there is no basis for Fusion's indemnity claim against Millenium, and the same should be dismissed.

**C.    The Nevada Court has already determined that the underlying suit is outside the scope of the indemnity provision.**

At the outset of the Nevada litigation, Fusion brought a motion to dismiss based on the forum selection clause of the Fusion Agreement. The forum selection clause, at section 11(a), states, in relevant part, as follows:

> The corporate laws of the State of Nevada shall govern all issues concerning the relative rights of the Company and its shareholders. **All other questions concerning the construction, validity, enforcement and interpretation of this Agreement** and the other Transaction Documents shall be governed by the internal laws of the State of Illinois, without giving effect to any choice of law or conflict of law provision or rule (whether of the State of Illinois or any other jurisdictions) that would cause the

6

> application of the laws of any jurisdictions other than the State of Illinois. Each party irrevocably submits to the exclusive jurisdiction of the state and federal courts sitting in the City of Chicago, for the adjudication of any dispute hereunder or under the other Transaction Documents or in connection herewith or therewith, or with any transaction contemplated hereby or discussed herein, and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of any such court, that such suit, action or proceeding is brought in an inconvenient forum or that the venue of such suit, action or proceeding is improper. (emphasis added)

In response to this motion, Millenium argued that the Nevada litigation was outside the scope of the forum selection clause because it did not raise claims based on a breach of the Fusion Agreement, but rather was grounded in tort. Specifically, Millenium claimed that Fusion had tortiously interfered with the Sutura Agreement. The Nevada Court agreed with Millenium and denied Fusion's motion to dismiss, explaining its ruling as follows:

> I mean we went back and forth and back and forth on this, but I'm still persuaded that the tortious claims of the plaintiff [Millenium] are outside the contract, and they are extra contractual, let me put it that way. And I think I do have jurisdiction. I think I do have venue. And if I wasn't clear, I think the distinguishing factor in the Schwarznegger [sic] case is again the car dealer sitting in Ohio, and he knows that Mr. — that Governor Schwarzengger lives in California and it's foreseeable that whatever he does is going to have some result in California, but his conduct is not aimed at California. Here the distinguishing factor here is that you had a prior relationship, and the prior relationship was the agreement which did have the forum selection clause, but **I think the claims of the plaintiffs do not arise out of or in connection with, as broad as that clause is, I just feel that they are outside the contract and not contemplated by the language of the contract.** So I'm going to deny the motion to dismiss, defendants' motion to dismiss, based on jurisdictional and venue grounds.

See Exhibit B, Transcript of Proceeding, p.31:12 - 32:18 (emphasis added).

Two years after the denial of the motion to dismiss, Fusion brought its motion for summary judgment on the various claims brought by Millenium against it, and also on Fusion's own counterclaim for attorneys' fees. Fusion's claim was based upon section 11(p) of the Fusion Agreement, entitled "Enforcement Costs", which states as follows:

> If: (i) this Agreement is placed by the Buyer in the hands of an attorney for enforcement or is enforced by the Buyer through any legal proceeding; or (ii) an attorney is retained to represent the Buyer in any bankruptcy, reorganization,

7

> receivership or other proceedings affecting creditors' rights and involving a claim under this Agreement; or (iii) an attorney is retained to represent the Buyer in **any other proceedings whatsoever in connection with this Agreement**, then the Company shall pay to the Buyer, as incurred by the Buyer, all reasonable costs and expenses including attorneys' fees incurred in connection therewith, in addition to all other amounts due hereunder. (emphasis added)

While the Nevada Court granted Fusion's motion with respect to the claims brought by Millenium, the Nevada Court denied Fusion's motion as it related to Fusion's claim for attorneys' fees. Subsequent to this order, the case was stayed.

Fusion's new lawsuit in Illinois seeks recovery of the same attorneys' fees from a new angle, the argument this time relying on the Fusion Agreement's indemnity provisions. As set forth in the Illinois Complaint, the Fusion Agreement requires Millenium to indemnify Fusion against:

> any cause of action, suit or claim brought or made against such Indemnitee and **arising out of or resulting from the execution, delivery, performance or enforcement of the Transaction Documents or any other certificate, instrument or document contemplated hereby or thereby**, other than with respect to Indemnified Liabilities which directly and primarily result from the gross negligence or willful misconduct of the Indemnitee.

Illinois Complaint at ¶13 (emphasis added).

The common thread between the forum selection clause, the attorneys' fees provision and the indemnity provision of the Fusion Agreement is that they are all limited in scope to disputes arising from the Fusion Agreement. Indeed, the language regarding the scope of the indemnity provision is practically identical to that of the forum selection clause. Fusion's claim for indemnity, therefore, has little chance of success, as the law of the case is that the Fusion-Millenium dispute does not arise from the Fusion Agreement. Thus, Fusion is engaging in forum shopping, bringing the Illinois Action (and seeking to have its counterclaim transferred to the Illinois Court) so that it can relitigate the issue of whether the Fusion-Millenium dispute arises from the Fusion Agreement, in hopes of obtaining a more favorable ruling. This is improper.

8

Collateral estoppel, also known as issue preclusion, generally prevents a party from relitigating an issue the party has already litigated and lost. Ferrell v. Pierce, 785 F.2d 1372, 1384 (7th Cir. 1986). "In general, collateral estoppel precludes relitigation of issues in a subsequent proceeding when: (1) the party against whom the doctrine is asserted was a party to the earlier proceeding; (2) the issue was actually litigated and decided on the merits; (3) the resolution of the particular issue was necessary to the result; and (4) the issues are identical." Kunzelman v. Thompson, 799 F.2d 1172, 1176 (7th Cir. 1986). Accord, County of Cook v. Midcon Corp., 773 F.2d 892, 898 (7th Cir. 1985). The policy underlying the doctrine is that "one fair opportunity to litigate an issue is enough." Bowen v. United States, 570 F.2d 1311, 1322 (7th Cir. 1978). The party asserting estoppel has the burden of establishing which issues were actually determined in his favor in the prior action. Davis & Cox v. Summa Corp., 751 F.2d 1507, 1518 (9th Cir. 1985). See Jones v. City of Alton, 757 F.2d 878, 885 (7th Cir. 1985).

In the present case, Fusion is estopped from arguing once again that the underlying dispute between Millenium and Fusion arose from the Fusion Agreement. Fusion raised this same argument at the outset of the underlying Nevada litigation in the context of a motion to dismiss, and again in the context of a motion for summary judgment, and was unsuccessful both times. As the obvious purpose for Fusion's new Illinois Complaint (and its present motion to transfer pending in the Nevada Court) is to move this case to a different court in hopes of obtaining a different ruling on the applicability of these provisions, Fusion's action is brought solely to relitigate an issue which has already been decided. Its efforts in this regard should not be condoned by this Court.

9

**IV.**

**IN THE EVENT THIS ACTION IS NOT DISMISSED,
IT SHOULD BE TRANSFERRED TO NEVADA.**

Pursuant to 28 U.S.C. §§1404(a), a case may be transferred between forums if the other forum is more convenient and a transfer would be in the interest of justice. Van Dusen v. Barrack, 376 U.S. 612, 616, 84 S.Ct. 805 (1964). In deciding whether transfer of a case is appropriate, the Court may consider a number of factors. In the present case, the factors weigh decidedly in favor of transferring the Illinois Complaint to Nevada and having it decided by the Nevada Court which has handled the case for more than two years already.

**A.    Whether transfer is in the interest of justice.**

As stated in Coffey v. Van Duren Iron Works, 796 F. 2d. 217 (7th Cir. 1986), the "interest of justice" is a separate component in a transfer analysis, and may be determinative in a particular case, even if the convenience of the parties and the witnesses might call for a different result. In the present case, the interest of justice is better served by having this matter continue in the District of Nevada. As set forth above, the Nevada Court has already ruled that the dispute between Fusion and Millenium did not arise from the Fusion Agreement. The Nevada Court expressly set this forth in its denial of Fusion's motion to dismiss. Furthermore, the Nevada Court's denial of Fusion's motion for summary judgment on its claim for attorneys' fees is consistent with this ruling, as the attorneys' fees provision also applies only to disputes arising out of the Fusion Agreement. The indemnity provision which is at the core of Fusion's new Illinois Complaint is limited in the same way. Fusion's obvious goal in bringing the new lawsuit in this Court and in seeking to have its counterclaim transferred from Nevada to Illinois is to escape the law of the case by seeking a different ruling from a different court. Fusion's forum shopping in this regard should not be permitted by this Court. The just result is for this case to be transferred to the forum in which it was brought — the District of Nevada.

**B.     The Plaintiff's choice of forum.**

While typically the plaintiff's choice of forum is given significant weight, such deference would not be appropriate in the present case because for all intents and purposes, Fusion is actually a defendant. In the underlying Nevada action, Fusion, along with Sutura, was a defendant, while Millenium was the plaintiff. Fusion's new lawsuit for indemnity is nothing more than an alternative theory for recovery of Fusion's attorneys' fees, which was originally brought as a counterclaim in the Nevada action. The case is similar to Piedmont Hawthorne Aviation, Inc. v. Tri-Tech Environmental Health & Safety, Inc., 402 F. Supp. 2d. 609, 616 (M.D.N.C. 2005), in which the "plaintiff" brought a declaratory judgment action in order to deprive the other party of his choice of forum. The Piedmont court decided that the plaintiff's choice was of less significance in such a situation. Here, as Fusion is actually a defendant in this matter, it would be more appropriate for deference to be given to Millenium's choice, as it is the actual initial plaintiff, and return this case to Nevada.

**C.     The convenience of the parties.**

At first blush this factor is a wash, as Nevada is clearly a more convenient forum for Millenium and Illinois is the more convenient forum for Fusion. However, by taking the relative financial means of the parties into account, Nevada is the better forum. In 800-Flowers, Inc. v. Intercontinental Florist, Inc., 860 F. Supp 128 (S.D. N.Y. 1994), the defendant's motion to transfer was denied because as a large corporation, the defendant was better able to absorb the added expense of litigating away from its home forum than was the individual plaintiff. "Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed." Id. at 135. The same situation is at play here. Fusion is a large company with significant assets, and indeed Fusion has already proven that it is capable of litigating away from its home forum, as it has

11

already successfully litigated this case in Nevada. Millenium on the other hand, at least according to Fusion, is a shell company with no assets, and Fusion is also seeking to bring claims individually against Millenium's principals, Ham and Aufdenkamp, both of whom reside in Nevada. Because the Millenium defendants are less financially able to carry on litigation outside of their home forum, the present case should continue in Nevada as opposed to Illinois.

**D.      The convenience of the witnesses.**

Motions for transfer are usually granted when the majority of witnesses are located in the transferee district. Dicken v. The United States, 862 F. Supp. 91 (D. Md. 1994). The same rationale set forth above for convenience of the parties applies to the convenience of the witnesses, as the primary witnesses will be the representatives of the various parties. As travel would be more of a burden to the individual principals of Millenium than it would be to Fusion, Nevada is the proper venue for this matter.

**E.      The relative familiarity of the courts with applicable law.**

In the usual case, transfer of venue will be favored if choice of law provisions point to the other venue's law. Van Dusen v. Barrack, supra. Fusion has argued that due to the choice of law provisions in the Fusion Agreement, Illinois law governs this case, which would weigh in favor of proceeding with this case the in Northern District of Illinois. However, as set forth above, it has already been determined that the dispute between Fusion and Millenium did not arise out of the Fusion Agreement. Rather, Millenium's claims were grounded in tort. Accordingly, the forum selection clause relied upon by Fusion has no application for all the reasons set forth in the Nevada Court's denial of Fusion's motion to dismiss. This case was originally brought as a tort case in Nevada, and Nevada law should apply. Thus, Nevada would be the better venue to decide this case.

**F.      Which forum would better serve judicial economy.**

As set forth in <u>In re Cuyahoga Equip. Corp</u>. 980 F. 2nd 110 ( 2nd Cir. 1992) where related claims are pending in one court, transfer to another court is disfavored. Here, the underlying case has already been litigated practically to its conclusion in the District of Nevada. The only issue remaining is that of Fusion's Nevada counterclaim for attorneys' fees. Fusion's new Illinois action merely supplements that counterclaim. It makes far more sense for the last remnants of this case to be handled by the Nevada Court, which has heard the case and handled it from the beginning.

**G.     Whether a contractual clause specifies a specific forum to resolve contractual disputes.**

Fusion's position is that the forum selection clause in the Fusion Agreement governs this dispute and requires that the dispute be tried under Illinois law in an Illinois court. However, Fusion's position is contrary to the law of the case. At the outset of this matter Fusion brought a motion to dismiss before the Nevada Court on the same basis. However, as set forth above, the Nevada Court ruled that the dispute between Fusion and Millenium did not arise from the Fusion Agreement, but rather was grounded in tort. Accordingly, the forum selection clause had no application to this dispute. Now, Fusion has re-stated its Nevada counterclaim for attorneys' fees as being grounded in the indemnity provisions of the Fusion Agreement as opposed to the attorneys' fees provision. However Fusion packages its claim, it fails for the same reason. The indemnity clause, just like the attorneys' fees provision and the forum selection clause, is limited in scope to matters arising from the Fusion Agreement. As the law of the case is that the dispute between Fusion and Millenium did not arise from the Fusion Agreement, the indemnity provision is of no effect and neither is the forum selection clause.

All things considered, it is appropriate that Fusion's claims be transferred to Nevada.

**V.**

**CONCLUSION**

13

Both the new lawsuit brought by Fusion here and the motion for transfer of Fusion's counterclaim in the Nevada action are brought for the purpose of avoiding the Nevada Court's prior ruling that the dispute between Fusion and Millenium did not arise from the Fusion Agreement. As Fusion's counterclaim for attorneys' fees, whether rooted in the attorneys' fees provision or the indemnity provision of the Fusion Agreement, depends upon a finding that the dispute instead *does* arise from the Fusion Agreement, Fusion seeks a new court to give it a different ruling on this core issue. Under the doctrine of issue preclusion, Fusion is barred from doing so. Furthermore, as Fusion has failed to provide adequate consideration for the Fusion Agreement, it is barred from enforcing the indemnity provision against Millenium in any event. Fusion's Illinois Complaint should be dismissed.

Finally, in the event this Court is not willing to dismiss the Illinois Complaint, under an analysis of the factors to be considered in deciding a motion for transfer, the convenience of the

parties, the interest of justice, and the other factors listed above dictate that this case should be transferred to its original venue, Nevada.

                                      Respectfully Submitted,

                                      DONOHUE BROWN MATHEWSON & SMYTH LLC

                                      By:  /s/ Michael J. Borree
                                            Michael J. Borree,
                                            One of the Attorneys for the Defendants

Donald J. Brown – ARDC # 00312630
Michael J. Borree – ARDC # 06281054
DONOHUE BROWN MATHEWSON & SMYTH LLC
140 South Dearborn, Suite 800
Chicago, IL 60603
Telephone: (312) 422-0900
Facsimile: (312) 422-0909
*Local Counsel for Defendants*

William R. Urga, Esq. - Nevada Bar No. 1195
Christopher D. Craft, Esq. - Nevada Bar No. 7314
JOLLEY URGA WIRTH WOODBURY & STANDISH
3800 Howard Hughes Pkwy., #1600
Las Vegas, Nevada 89169
Telephone:    (702) 699-7500
Facsimile:    (702) 699-7555
*Attorneys for Defendants*