**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| FUSION CAPITAL FUND II, LLC, | ) | |
| | ) | |
| Plaintiff-Counter-Defendant, | ) | |
| | ) | 07 C 4543 |
| v. | ) | |
| | ) | |
| MILLENIUM HOLDING GROUP, INC., | ) | Honorable Milton I. Shadur |
| RICHARD HAM and CARLA | ) | |
| AUFDENKAMP, | ) | |
| | ) | |
| Defendants-Counter-Plaintiff. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF FUSION CAPITAL FUND II, LLC'S
RULE 56 MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS
<u>RICHARD HAM AND CARLA AUFDENKAMP</u>**

Edward F. Malone (edward.malone@bfkn.com)
Rebecca Ray (rebecca.ray@bfkn.com)
BARACK FERRAZZANO KIRSCHBAUM
  & NAGELBERG LLP
200 West Madison Street, Suite 3900
Chicago, Illinois 60606
Phone No. (312) 984-3100
Fax No. (312) 984-3150

*Attorneys for Plaintiff*

**INTRODUCTION**

Plaintiff Fusion Capital Fund II, LLC ("Fusion") filed this action to recover attorneys' fees and costs incurred in defending against Millenium Holding Group, Inc.'s ("MHG") lawsuit in Nevada (the "Nevada Litigation"). This Court has granted Fusion summary judgment on Counts II and III of its First Amended Complaint against MHG. (Dkt. 76-77.) In this memorandum, Fusion shows that it is entitled to a declaratory judgment that defendants Richard Ham ("Ham") and Carla Aufdenkamp ("Aufdenkamp," together "the individual defendants") are the alter egos of MHG (Count I) and that, therefore, Fusion is also entitled to summary judgment on its contract claims against them (Counts II and III) for the same reasons this Court granted Fusion summary judgment on those counts against MHG.

**FACTUAL BACKGROUND – STATEMENT OF UNDISPUTED MATERIAL FACTS[1]**

It is undisputed that MHG is a Nevada corporation with its principal place of business in Nevada. (Dkt. 52 ¶ 5.) Since 1999, MHG has been a "shell" corporation. (*Id.*) MHG has virtually no assets and is millions of dollars in debt. (*Id.*)

Together, Ham and Aufdenkamp, a married couple, own a majority of MHG's outstanding stock. (Dkt. 52 ¶ 8; Ex. 1 (excerpts from the deposition transcript of Aufdenkamp) at 11:22-12:2; Ex. 2 (excerpts from the deposition transcript of Ham) at 219:6-219:8.)

Ham and Aufdenkamp are MHG's only employees. (Dkt. 52 ¶ 5.) Since 1997, Ham has served as MHG's President, Treasurer, Chief Executive Officer and Aufdenkamp has served as MHG's Vice-President and Secretary. (Dkt. 52 ¶¶ 6, 7.) Aufdenkamp does anything that Ham

---

[1] Pursuant to the Court's permission granted on April 29, 2009, Fusion has not submitted a separate Local Rule 56.1 Statement of Undisputed Facts. In support of its Motion, Fusion relies on the defendants' admissions in their Answer and Affirmative Defenses to Fusion's First Amended Complaint ("Dkt. 52"), and evidence obtained during discovery during the Nevada Litigation, which Fusion has attached as exhibits hereto. Fusion has sought to update this discovery in this litigation, but it has not received much of what it requested. (Affidavit of Edward F. Malone, attached as Ex. 3 ¶¶ 4-12.) There is no reason to believe that any of the facts discovered during the Nevada Litigation have changed, but if the individual defendants have evidence showing that MHG now has a separate identity, they should produce it or be subject to an adverse factual finding. *See* Fed. R. Civ. Pro. R. 37(b)(2)(A).

asks her to do.  (Ex. 1 at 22:11-22:18.)  They operate MHG out of their home.  (Dkt. 52 ¶ 8.) MHG leases the home and the individual defendants supposedly pay a percentage of the rent, but Ham is unclear on the details of that arrangement between the individual defendants and MHG. (Ex. 2 at 10:22-11:2, 11:16-19.)  Ham is also the controlling shareholder of Ham Consulting Services, Inc. ("Consulting Services"), which has also operated out of the individual defendants' residence.  (Ex. 1 at 88:3-88:7; Ex. 2 at 6:16-6:17.)

Ham and Aufdenkamp are MHG's only directors, and have been its only directors since 2000, even though MHG's corporate by-laws require three directors.  (Ex. 1 at 105:6-105:11; Ex. 2 at 59:5-59:21.)  Defendants claim MHG cannot afford a third director.  (Ex. 1 at 105:19-105:24; Ex. 2 at 59:5-59:21.)  Ham and Aufdenkamp meet as a Board of Directors "whenever it is required that [they] have business to discuss."  (Ex. 1 at 102:10-102:11.)

MHG's corporate by-laws require an annual shareholders' meeting every March.  (Ex. 1 at 102:20-103:14.)   No such meeting was held in any year between 2003 and 2006.  (*Id.*) MGH's document production contains no evidence of shareholder meetings in either 2007 or 2008.  (Ex. 3 ¶ 12.)

Since 1999, MHG has been "in the process" of developing a financial services business, but after nearly a decade, MHG has no operations.  (Ex. 1 at 81:2-81:19; Ex. 2 at 7:7-7:9; Ex. 4 (excerpts from the deposition transcript of Carl Ranno) at 18:15-19:5.)  As of May 12, 2009, "Latest News" on MHG's website was from January 2006, and the most recent information about the company's financial condition was as of September 2005.  (Ex. 3 ¶ 13.)

Among the business dealings between MHG and the individual defendants was MHG's 2000 purchase of an insurance agency from Consulting Services.  (Ex. 2 at 14:24-15:9, 16:10-16:21, 27:4-27:24, 73:11-74:4.)  MHG paid approximately $23,000 or $24,000 for the insurance

agency. (*Id.*) In 2000, the agency generated between $800 and $1200 per month in revenue. (*Id.*) By 2004, the insurance agency generated only $100 to $120 in revenue per month. (*Id.*) Ham bought the insurance agency back from MHG for $2800 – a fraction of what MHG paid for the agency just four years earlier. (*Id.*)

MHG failed to make any filings with the Internal Revenue Service from 1998 through 2004. (Ex. 1 at 80:7-80:14; Ex. 2 at 9:13-9:15, 9:24-10:18.) In response to discovery in this litigation seeking all tax returns not produced in the Nevada Litigation, MHG produced no documents. (Ex. 3 ¶¶ 11, 12.) In his deposition in the Nevada Litigation, Ham offered the excuse that the company did not have any income during that period. (Ex. 2 at 9:24-10:18.)

MHG is unable to pay its creditors because it does not generate revenue. (Ex. 2 at 320:18-320:21.) Ham has paid MHG's expenses out of his pocket. (Ex. 2 at 185:1-185:7, 320:1-320:21.) MHG has compensated consultants by issuing them MHG shares. (Ex. 1 at 113:19-113:21, 116:6-116:9, 124:12-124:16.) In 2004, Ham and Aufdenkamp made loans in excess of $20,000 to MHG. (Ex. 1 at 70:10-70:23, 71:2-71:7, 94:5-94:19.) In 2006, 2007, and 2008, Ham and Aufdenkamp continued to make sizeable loans to MHG. (Ex. 5, 6, 10.)

MHG has been accruing salaries for Ham and Aufdenkamp. These accrued salaries for Ham and Aufdenkamp increased substantially during the period 2000 to 2004. (Ex. 1 at 111:4-111:21, 119:17-120:6.) This was during a time in which MHG had no operations and realized no profits. (*Id.*) As directors, Ham and Aufdenkamp "approved" this accrued compensation for themselves. (*Id.* at 120:4-120:6.) Since November or December 2004, Ham and Aufdenkamp have issued themselves additional MHG shares valued at $573,375 to compensate them for their accrued salaries since 1999. (*Id.* at 107:20-108:15; 110:2-110:8.)

## **PROCEDURAL HISTORY**

3

On February 27, 2008, Fusion served its first set of discovery in this litigation on all defendants. (Ex. 3 ¶ 2.) Fusion's Requests for Production to the individual defendants contained only five requests, all aimed at piercing MHG's corporate veil and holding the individual defendants responsible for Fusion's attorneys' fees and costs pursuant to the Stock Purchase Agreement between Fusion and Millenium ("SPA"). (Ex. 3 ¶ 2.) Defendants failed to make timely responses or objections to the requests. (Ex. 3 ¶ 2.) On May 29, 2008, the individual defendants objected to all five document requests on the ground that they were premature and documents would not be produced "unless and until" a court found that MHG was liable for Fusion's attorneys' fees and costs. (Ex. 3 ¶ 4.)

On August 1, 2008, Fusion filed its Motion for Partial Summary Judgment against MHG on Counts II and III. (Dkt. 67.) On August 20, 2008, the parties appeared before the Court, and Fusion's counsel noted defendants' failure to produce documents. (Ex. 3 ¶ 6.) Defendants' counsel expressed concern about the privacy of financial information. (Ex. 3 ¶ 6.) The Court ordered that all defendants produce financial information for "attorneys' eyes only." MHG did not produce documents until October 24, 2008. The individual defendants produced no documents and neither party responded to Fusion's interrogatories. (Ex. 3 ¶ 7.) On December 23, 2008, the Court held that MHG was liable for the fees and costs incurred by Fusion in the Nevada Litigation. (Dkt. 76, 77.)

After several consultations between counsel, on March 2, 2009, MHG made another document production and all parties provided interrogatory answers, but the individual defendants still produced no documents. (Ex. 3 ¶ 12.) On March 6, 2009, defendants' second set of counsel in this litigation filed and served a Motion to Withdraw as Counsel. (Ex. 3 ¶¶ 3, 12; Dkt. 84.) After two status hearings regarding substitute counsel, on April 8, 2009, the Court

4

ordered that defendants obtain new counsel by the next status hearing on April 23, 2009. (Dkt. 87.) On April 23, 2009, defendants still had not obtained new counsel, but reported that they had engagement letters from two Chicago firms. The Court allowed defendants another week to obtain and educate counsel. On April 29, 2009, new counsel for defendants appeared in Court and indicated he would file an appearance later that day, but he did not – and to date has not done so. (Ex. 3 ¶ 12.)

## ARGUMENT

**I.     SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). No genuine issue exists if the evidence is such that no reasonable jury could return a verdict for the nonmovant. *Anderson*, 477 U.S. at 248; *see also Laborers' Pension Fund v. Lay-Com, Inc.*, 455 F. Supp. 2d 773, 776 (N.D. Ill. 2006) (Shadur, J.) (granting summary judgment on veil piercing claim).

**II.    CHOICE OF LAW**

The threshold issue is what law applies to determine whether MHG's corporate veil should be pierced. Because this Court sits in Illinois, Illinois's choice-of-law rules apply. *Stromberg Metal Works, Inc. v. Press Mech., Inc.*, 77 F.3d 928, 933 (7th Cir. 1996). Under Illinois law, "[e]fforts to 'pierce the corporate veil' are governed by the law of the state of incorporation . . . ." *Stromberg*, 77 F.3d at 933. MHG is incorporated in Nevada. (Dkt. 52 ¶ 5.) Therefore, Nevada veil piercing law applies.

**III.   FUSION IS ENTITLED TO SUMMARY JUDGMENT ON COUNT I.**

The undisputed facts demonstrate that Ham and Aufdenkamp are MHG's alter egos and the corporate fiction should be disregarded. Under Nevada law, "the equitable remedy of

5

'piercing the corporate veil' may be available to a plaintiff in circumstances where it appears that the corporation is acting as the alter ego of a controlling individual." *LFC Marketing Group, Inc. v. Loomis*, 8 P.3d 841, 845 (Nev. 2000). This remedy is necessary to " 'do justice' whenever it appears that the protections provided by the corporate form are being abused." *Id.* at 845-46.

To pierce the corporate veil, the plaintiff must show by a preponderance of the evidence that:

> (1) the corporation [is] influenced and governed by the person asserted to be the alter ego; (2) there [is] a unity of interest and ownership that one is inseparable from the other; and (3) the facts must be such that adherence to the corporate fiction of a separate entity would, under the circumstances, sanction a fraud or promote injustice.

*Id.* at 847.

### A. Ham and Aufdenkamp Influenced and Governed MHG.

The undisputed facts establish that Ham and Aufdenkamp influence and govern MHG. To determine if an individual "influenced and governed" a corporate entity, Nevada courts look to the individual's stock ownership, as well as officer and director positions. *See, e.g., Lorenz v. Beltio, Ltd.*, 963 P.2d 488, 496 (Nev. 1998). In *Lorenz*, the Supreme Court of Nevada noted that there was no dispute as to whether individual husband and wife defendants "influenced and controlled" the corporate entity. In reaching this conclusion, the *Lorenz* court noted that, together, the couple owned 100% of the corporation's outstanding stock. *Id.* Additionally, the husband was the corporate president and "ran the business." *Id.* The wife was secretary/treasurer. *Id.*

Here, it is undisputed that, together, Ham and Aufdenkamp own a majority interest in MHG. (Ex. 2 at 219:6-219:8; Ex. 1 at 11:22-12:2.) As in *Lorenz*, Ham has been the President, CEO, and Treasurer of MHG, while Aufdenkamp has served as Secretary and Vice-President.

6

(Dkt. 52 ¶¶ 6, 7.) Similarly, Ham and Aufdenkamp have served as MHG's only directors since 2004, even though MHG's corporate by-laws require a minimum of three directors at all times. (Dkt. 52 ¶ 27; Ex. 1 at 22:25-23:4, 24:3-24:5, 105:6-105:11; Ex. 2 at 59:5-59:21.) The corporation had no other officers, directors, or employees. (Dkt. 52 ¶ 28.) This undisputed evidence establishes that as the majority shareholders, sole officers and directors of MHG, Ham and Aufdenkamp "influenced and governed" MHG.

### B. There Is a Unity of Interest and Ownership Such That the Individual Defendants Are Inseparable from MHG.

A party seeking to pierce the corporate veil must also show that there is such a unity of interest and ownership that the purported alter ego and the corporate entity are inseparable. *LFC*, 8 P.3d at 847. To determine whether a unity of interest and ownership exists, Nevada courts consider the following factors:

> (1) commingling of funds; (2) undercapitalization; (3) unauthorized diversion of funds; (4) treatment of corporate assets as the individual's own; and (5) failure to observe corporate formalities.

*LFC,* 8 P.3d at 904; *see also Lorenz*, 963 P.2d at 497. While these factors are helpful, they are "non-conclusive" and Nevada courts recognize that "there is no litmus test for determining when the corporate fiction should be disregarded; the result depends on the circumstances of each case." *LFC*, 8 P.3d at 904 (quoting *Polaris Indus. Corp. v. Kaplan*, 747 P.2d 884, 887 (Nev. 1987)).

Fusion first outlines the undisputed evidence gathered in the Nevada Litigation establishing the various factors indicating a unity of interest and ownership. Next, Fusion outlines additional discovery relating to these factors that the individual defendants have failed to produce, despite repeated requests by Fusion's counsel, an order by this Court, and numerous promises from MHG's former counsel. Fusion asks that this Court make adverse findings of fact

as a sanction for the individual defendants' refusal to comply with the Court's discovery August 20, 2008 order.

### 1. *Commingling of funds.*

The record in the Nevada Litigation contains undisputed evidence of the commingling of funds of MHG and the individual defendants. That evidence includes the following:

- Ham has paid "out of pocket" for MHG expenses. (Ex. 2 at 185:2-185:7.)

- During the period 2000 to 2004, Ham and Aufdenkamp received no compensation; their wages were accrued on the books of MHG. (Ex. 1 at 111:4-111:21, 119:17-120:6.)

### 2. *Undercapitalization.*

MHG's lack of capital also weighs in favor of a finding of a unity of interest and ownership between MHG and the individual defendants. It is undisputed that:

- Since 1999, MHG has had no material operations. (Ex. 2 at 7:7-7:9; Ex. 4 at 18:15-19:5.) A visit to MHG's website, www.mnhginc.com, indicates that the last press release by the company was over three years ago, in January 2006. Its investor relations page shows MHG's capital structure as of September 29, 2005. (Ex. 3 ¶ 13.)

- During the 2004 fiscal year, MHG's auditors noted that MHG may not be able to continue as a going concern. (Ex. 7 (excerpts from deposition transcript of J. Griffith) at 47:16-49:8; Ex. 8.)

- In this litigation, MHG has not produced any financial statements for the fiscal years 2006-2008. (Ex. 3 ¶¶ 7, 12.)

- MHG is unable to pay its debts. (Ex. 2 at 320:18-320:21.) Ham paid some of these debts himself. Other debts were satisfied with MHG stock. (Ex. 2 at 185:2-185:7; Ex. 1 at 113:19-113:21, 116:6-116:9, 124:12-124:14.) Ham and Aufdenkamp continue to make sizeable loans to MHG. (Ex. 5, 6, 10.)

- Instead of paying salaries, MHG has accrued excessive salaries for Ham and Aufdenkamp since at least 1999. (Ex. 1 at 111:4-111:21; Ex. 2 at 312:2-312:6.) Since November or December 2004, MHG has issued additional shares to Ham and Aufdenkamp as compensation for the accrued salaries since 1999. (Ex. 1 at 107:20-108:15.)

### 3. *Unauthorized diversion of funds.*

The third factor Nevada courts consider is whether there is evidence of the unauthorized

diversion of funds to the individual. In this case, this factor is not relevant because (1) the corporation has had little or no income, s*ee, e.g., United States v. Bretthauer*, 2008 U.S. Dist. LEXIS 70079, at *12 (D. Nev. Sept. 15, 2008) (lack of direct evidence of unauthorized diversion of funds did not bar piercing where corporation not producing income); and (2) any transfers of MHG's funds to Ham and Aufdenkamp would, by definition, be "authorized" because Ham and Aufdenkamp were the only officers or directors who could authorize such a transaction. To the extent the diversion of funds had to be approved by the Board, however, the actions were not appropriately authorized because the Board lacked a third, independent director. (Ex. 1 at 105:5-105:11; Ex. 2 at 59:5-59:21.) These "approved" transactions are also evidence of the individual defendants treating MHG's assets as their own, which is discussed more fully below.

Ham and Aufdenkamp, in their capacities as Board members, "approved" substantial increases in their accruing salaries. (Ex. 1 at 119:17-119:23, 120:4-120:6.) These salary increases occurred during a time period when MHG had no operations and no profits. (*Id.* at 119:17-120:6.)

As directors of MHG, Ham and Aufdenkamp also "approved" the purchase of an insurance agency from Consulting Services, in which Ham had a majority interest. In 2000, MHG purchased the insurance agency from Consulting Services with MHG stock valued at approximately $24,000. (Ex. 2 at 27:4-24.) When MHG bought the insurance agency, the agency generated between $800 and $1200 of revenue per month. (*Id.* at 16:10-16:21.) In 2004, MHG sold the insurance agency back to Consulting Services. (*Id.* at 15:7-15:9.) Consulting Services paid only $2,800 to purchase the agency back from MHG. (*Id.* at 73:11-73:17.) At the time MHG sold the agency, it was generating only $100 to $120 per month in revenue. (*Id.* at 16:20-21.)

9

In short, MHG paid over $20,000 to Ham for an insurance agency with modest profitability. Over four years, MHG drove down the profitability, resulting in Ham paying a fraction of the original purchase price to buy the agency back. These transactions were "approved" by the MHG Board of Directors, which consisted of only Ham and Aufdenkamp. (Ex. 1 at 95:13-95:22.) Ham and Aufdenkamp never engaged in discussions regarding the propriety of approving these related transactions on behalf of MHG. (Ex. 1 at 95:23-96:2.)

The individual defendants' approval of increased compensation for themselves when the company had no business, and the Consulting Services transaction are evidence of the unauthorized diversion of funds to the individual defendants such that this factor should also weigh in favor of a finding that there is a unity of interest between the individual defendants and MHG.

### 4. *Treatment of the corporation's assets as own.*

The undisputed evidence shows that Ham and Aufdenkamp treated MHG's assets as their own. Nevada courts have relied on evidence of corporate officers living rent-free on property owned by the corporation to pierce the corporate veil. *See, e.g., Bretthauer*, 2008 U.S. Dist. LEXIS 70079, at *12-13. In *Bretthauer,* the court noted that the purported alter ego "lived (and continue[d] to live)" on corporate property and the court expressly noted that "there [was] no indication that he paid rent." *Id.*

MHG's business address and Ham and Aufdenkamp's residential address are the same. MHG leases the house. (Ex. 2 at 10:22-11:2.) Ham and Aufdenkamp are supposed to pay a percentage of the lease. (*Id.* at 10:22-11:2.) The discovery in the Nevada Litigation produced no clear answer about the actual financial arrangement. Ham testified at his deposition that he was unclear as to the leasing arrangement between Ham and Aufdenkamp, on the one hand, and

10

MHG, on the other. (*Id*. at 10:22-11:2.) Ham's uncertainty merely confirms that Ham and Aufdenkamp treat the corporate assets as their own. At one time, Ham's other company, Consulting Services, also operated out of the same address. (Ex. 1 at 88:3-88:7; Ex. 2 at 6:16-6:17.) Fusion has been unable to verify that Ham and Aufdenkamp are currently paying anything toward the lease because the individual defendants have failed to produce documents in this litigation regarding their lease with MHG. (Ex. 3 ¶¶ 4-12.)

### 5. *Failure to observe corporate formalities.*

A failure to observe corporate formalities is the final factor Nevada courts look to in deciding whether there is enough unity of interest and ownership such that piercing the corporate veil is warranted. The undisputed evidence gathered during the Nevada litigation shows that MHG failed to observe even the most basic corporate formalities.

*Failure to File with IRS.* MHG did not file federal income tax returns during the period 1998 through 2004. (Ex. 1 at 80:7-80:14; Ex. 2 at 9:13-9:15, 9:24-10:18.) Ham's only explanation of this violation of the corporate form was simply that MHG did not have any income. (Ex. 2 at 9:24-10:18.) But tax payers must file tax returns even if they have no income. In *Bretthauer*, the federal court expressly noted the corporation's failure to file tax returns as a failure of corporate formality weighing in favor of piercing the corporate veil. *Bretthauer*, 2008 U.S. Dist. LEXIS 70079, at *13.

*Board of Directors.* MHG's corporate by-laws require no fewer than three directors. (Ex. 1 at 105:6-105:11; Ex. 2 at 59:5-59:21.) It is undisputed, however, that, since 2000, MHG has had only two directors – Ham and Aufdenkamp. (Ex. 1 at 105:5-105:11; Ex. 2 at 59:5-59:21.) This lack of a third, independent director is purportedly due to a lack of funds. (Ex. 1 at 105:19-105:24; Ex. 2 at 59:5-59:21.) The MHG "Board" does not have regularly scheduled

11

meetings. Instead, Ham and Aufdenkamp meet "whenever it is required that [they] have business to discuss." (Ex. 1 at 102:10-102:11.)

*Shareholders' Meetings.* MHG's corporate by-laws also call for a shareholders' meeting every March. (Ex. 1 at 102:20-103:14.) It is undisputed that MHG did not hold an annual shareholder meeting in 2003, 2004, 2005, or 2006. (*Id*.) In response to Fusion's discovery requests to MHG, the company produced no documents evidencing shareholders' meetings in 2007 or 2008. (Ex. 3 ¶ 12.)

The undisputed evidence of MHG's failure to file income tax returns with the IRS, the lack of a third director, and the failure to hold annual shareholders' meetings, as required by the corporate by-laws, all demonstrate a disregard for corporate formalities, leading to an abuse of the corporate form.

### 6. *Additional evidence not produced.*

As mentioned above (*supra* at 4-5), the individual defendants and MHG have failed to fully respond to discovery relevant to the piercing issue, despite direction from this Court and numerous promises from the individual defendants' various counsel. The individual defendants' and MHG's disregard for their obligations under the Federal Rules of Civil Procedure and for this Court's August 20, 2008 order (Dkt. 71) warrants an appropriate sanction. *See* Fed. R. Civ. P. 37(6)(2)(A). Fusion, therefore, respectfully requests that the Court make adverse findings of fact that (1) there has been a commingling of the funds of MHG and the individual defendants; (2) the individual defendants have treated the corporate assets as their own; and (3) the individual defendants have made unauthorized diversions of funds for their own use.

Fusion requested discovery of documents not produced in the Nevada Litigation because they were created after discovery closed in that Litigation, or were otherwise relevant to whether

Ham and Aufdenkamp were in fact the alter egos of MHG. Despite the Court's August 20, 2008 Order that all defendants produce financial documents subject to the protective order, MHG did not produce documents until October 24, 2008. (Ex. 3 ¶ 7.) That production contained almost exclusively publicly available documents. (Ex. 3 ¶ 7.) Over four months later and almost six months after this Court's order, on March 2, 2009, MHG produced additional documents, consisting of Board Meeting Minutes and promissory notes issued by MHG, but no recent financial statements. (Ex. 3 ¶¶ 7, 12.) The individual defendants have still not produced any documents. The items Fusion requested, and which the individual defendants have failed to produce, include:

- Documents relating to any transaction between Ham and MHG, Aufdenkamp and MHG, or Ham Consulting Company and MHG;

- Documents relating to any employer/employee relationship or consulting relationship between Ham and MHG, Aufdenkamp and MHG, or Ham Consulting Company and MHG; and

- All tax returns filed by the individual defendants jointly or individually.

(*Id.* ¶ 2.)

Under these circumstances, it is appropriate to draw adverse inferences from the individual defendants' and MHG's failure to fully respond to discovery and make factual findings in favor of Fusion on the piercing issue.

### C. Observing MHG's Corporate Form Would Sanction a Fraud or Promote Injustice with Respect to Fusion.

Observing MHG's corporate form and shielding Ham and Aufdenkamp from MHG's liabilities would promote injustice and possibly sanction a fraud with respect to Fusion. Under Nevada law, proof of actual fraud is not necessary. Nevada courts have pierced the corporate veil when the abuse of the corporate form would result in an unsatisfied judgment. *LCF,* 8 P.3d at 905 (finding third element satisfied because judgment creditors were unable to recover their

13

judgment for over three years and that "the carefully designed business arrangements . . . contributed" to that inability to collect); *Lorenz*, 963 P.2d at 497-98 (finding third element met because "the Lorenzes will never have a chance to receive the rent or other payments they deserve because Beltio, Ltd. filed for bankruptcy").

Here, it seems likely that unless the veil is pierced, Fusion will be unable to recover on a judgment awarding its attorneys' fees. As emphasized above, MHG has no operations. If it has assets against which Fusion can recover, Fusion has been unable to learn about those assets because MHG has failed to produce its most recent financial statements despite repeated requests. (Ex. 3 ¶¶ 4-12.) Fusion entered into the SPA expecting that MHG would become an operating company. When Fusion began to have concerns about potential underwriting liability, Fusion terminated its contract, as the terms of the SPA allowed. Millenium then failed to get replacement financing, and the merger subsequently failed. The Nevada court correctly held that Fusion did not cause the MHG/Sutura merger to fail. (Ex. 9.) Fusion now attempts to recover the attorneys' fees it spent litigating against MHG's baseless claims in Nevada. Failing to pierce the corporate veil here would render the indemnification and attorneys' fees provisions in the SPA meaningless.

### IV. FUSION IS ENTITLED TO SUMMARY JUDGMENT ON COUNTS II AND III AGAINST THE INDIVIDUAL DEFENDANTS.

This Court has already granted summary judgment against MHG on Counts II and III of Fusion's complaint. (Dkt. 76.) MHG is now liable for Fusion's attorneys' fees and costs pursuant to two provisions of the SPA between Fusion and MHG. When a court "pierces the corporate veil," the corporation's contractual obligations pass to the alter egos of that corporation. *See, e.g., Trans-Aircraft Sales, Inc. v. Procter & Gamble, Inc.*, 1989 U.S. Dist. LEXIS 2930, at *11 (N.D. Ill. Mar. 16, 1989). As discussed above, the circumstances here

warrant piercing the corporate veil because the individual defendants are the alter egos of MHG. (*Supra* § III.) If the Court grants summary judgment against the individual defendants on Count I of the First Amended Complaint, then summary judgment against the individual defendants on Fusion's Counts II and III is appropriate as a matter of law.

## **CONCLUSION**

For all of the foregoing reasons, Fusion respectfully requests that the Court grant Fusion's Motion for Summary Judgment against the individual defendants on Counts I, II, and III of Fusion's First Amended Complaint.

Dated: May 13, 2009.                                  Respectfully submitted,

                                                      s/ Edward F. Malone

Edward F. Malone (edward.malone@bfkn.com)
Rebecca D. Ray (rebecca.ray@bfkn.com)
BARACK FERRAZZANO KIRSCHBAUM
  & NAGELBERG LLP
200 West Madison Street, Suite 3900
Chicago, Illinois  60606
Phone No.  (312) 984-3100
Fax No.  (312) 984-3150

## **CERTIFICATE OF SERVICE**

  The undersigned, an attorney, states that I am one of the attorneys for Plaintiff and do hereby certify that I have this day caused a true and correct copy of **PLAINTIFF'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT AGAINST DEFENDANTS RICHARD HAM AND CARLA AUFDENKAMP** to be served upon all defendants via UPS overnight delivery to the address below:

  12 Winding Road
  Henderson, NV 89052

                s/ Edward F. Malone