IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FUSION CAPITAL FUND II, LLC,        )
                                    )
    Plaintiff/Counterdefendant,    )
                                    )
v.                                  )    07 C 4543
                                    )
MILLENIUM HOLDING GROUP, INC., et al., )
                                    )
                                    )
    Defendants/Counterplaintiffs.  )

## MEMORANDUM OPINION AND ORDER

Fusion Capital Fund II, LLC ("Fusion"), having prevailed in its claim against Millenium Holding Group, Inc. ("Millenium"),[1] has also moved to thrust liability on Millenium's principals Richard Ham and his wife Carla Aufdenkamp (collectively "Hams") on alter ego principles (a doctrine also--and interchangeably--called "piercing the corporate veil"). Fusion's Fed. R. Civ. P. ("Rule") 56 summary judgment motion to that end is ripe for decision, for both sides have tendered submissions in accordance with this District Court's LR 56.1.[2]

As the ensuing analysis reflects in that regard, neither Hams' LR 56.1(b)(3)(B) response to Fusion's LR 56.1(a)(3) statement nor Hams' own LR 56.1(b)(3)(C) statement does raise any

---

[1] See this Court's comprehensive December 23, 2008 memorandum opinion and order ("Opinion") published at 590 F.Supp.2d 1055.

[2] LR 56.1 was adopted to implement Rule 56 by facilitating the identification of, or by highlighting the absence of, any genuine issues of material (that is, outcome-determinative) fact.

genuine issue of material fact. Hence for the reasons stated here, Fusion's motion for summary judgment against Hams on Complaint Counts I, II and III is granted.

## Summary Judgment Standards

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to nonmovants and draw all reasonable inferences in their favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir. 2002)). But a nonmovant must produce more than "a mere scintilla of evidence" to support the position that a genuine issue of material fact exists (Wheeler v. Lawson, 539 F.3d 629, 634 (7th Cir. 2008)) and "must come forward with specific facts demonstrating that there is a genuine issue for trial" (id.). Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). This opinion has applied those standards, but something should be said at the outset about the nature of the parties' submissions in that respect.

On that score Hams' counsel has either misread or misperceived the plain directive of LR 56.1(b)(3), which requires "a concise response to the movant's statement that shall

contain...(B) a response to each numbered paragraph in the moving party's statement, including, in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon...." Thus, apart from Hams' having admitted all other aspects of Fusion's LR 56.1(a)(3) statement:

    1. They assert that they "lack personal knowledge or a belief as to the accuracy of the statements of fact made in Statement 1." This is of course not the pleading stage of the case, so that such a deemed disclaimer (drawn from the provisions of Rule 8(b)(5)) is totally out of place.

    2. After having admitted Fusion's Statement 6, Hams continue by stating their view as to the legal effect of two aspects of that Statement 6. That does not conform to the LR's requirements either, and so it is stricken as surplusage.

    3. Hams' response to Statement 9 includes a nonresponsive assertion that they are not admitting the effect of the facts adduced by Fusion. That gratuitous addition is also stricken.

    4. Hams' responses to Statements 10 and 11 contain denials that reassert arguments that were made and lost in the Nevada litigation. Those denials are stricken as well.

    5. Hams follow their admission of Fusion's

> Statement 13, which describes Fusion's victory and Millenium's loss via summary judgment in the Nevada action, by going on to "add that Millenium is appealing the District Court's ruling." But the pendency of an appeal from the final judgment in Nevada does not at all affect the preclusive effect of that judgment (see, e.g., <u>Ross ex rel. Ross v. Bd. of Educ. of Township High Sch. Dist. 211</u>, 486 F.3d 279, 284 (7th Cir. 2007) and Supreme Court decisions cited there). Hence Hams' gratuitous addition has no force at all as to either this Court's earlier Opinion or this one.

All of that being true, Fusion's LR 56.1(a)(3) statements are really admitted in their entirety.

On the other side of the "v." sign, Fusion has also included some Rule 8(b)(5)-type disclaimers in its responses to Hams' LR 56.1(b)(3)(C) statement. Again those attempted disclaimers carry no force in the Rule 56 context, but Hams' statements as to which Fusion says it lacks information sufficient to form a belief make no difference in the outcome--again because they do not raise any factual issues that prevent the operation of Rule 56 in Fusion's favor.

## Background

It is of course unnecessary to repeat what has been said in the Opinion as to the background of this action, including the

information as to the underlying Nevada litigation referred to there. For the rest, it can most effectively be addressed in conjunction with this opinion's legal analysis.

### Hams' Potential Liability

Although the litigants differ sharply as to the legal effect of the relationship between Hams and Millenium, they have no quarrel as to the operative standards. They agree that Nevada law provides the rules of decision.[3] And they further agree that these are factors to which the Nevada Supreme Court looks for the potential piercing of the corporate veil (LFC Mktg. Group, Inc. v. Loomis, 8 P.3d 841, 846-47 (Nev. 2000)):

> (1) the corporation must be influenced and governed by the person asserted to be the alter ego; (2) there must be such unity of interest and ownership that one is inseparable from the other; and (3) the facts must be such that adherence to the corporate fiction of a separate entity would, under the circumstances, sanction [a] fraud or promote injustice.

As LFC, id. at 845-46 also teaches, that remedy is called for when needed "to 'do justice' whenever it appears that the protections provided by the corporate form are being abused."

As to the first of those three quoted criteria, Hams' Mem. 4 acknowledges:

> The first alter-ego requirement is satisfied. As the sole officers and sole members of MHG's [Millenium's]

---

[3] Fusion's Reply Mem. 6 n.5 refers to the paucity of corporate caselaw in Nevada, so that reference to generally applicable principles elsewhere may also be useful.

5

board of directors ("Board"), the Hams influenced and governed the entity.

Indeed, that is a pallid statement of the Hams-Millenium interrelationship, as the ensuing discussion of the other two factors reveals.

As for the second ("unity of interest") element in the individual-to-corporation relationship, LFC, 8 P.3d at 847 reconfirms the factors that, "though not conclusive, may indicate the existence of an alter ego relationship":

> (1) commingling of funds; (2) undercapitalization; (3) unauthorized diversion of funds; (4) treatment of corporate assets as the individual's own; and (5) failure to observe corporate formalities.

Fusion's original Mem. 7-13 spoke effectively to each of those criteria. And when Hams then sought to advance makeweight arguments in response, the powerful submission in Fusion's Reply Memorandum ("R. Mem.") 6-13 really demolished Hams' effort to do so.

It would really be an act of supererogation to repeat what Fusion's counsel presented so well in that Reply Memorandum. Instead this Court adopts the thorough presentation there as its own, supplemented here by a few points of emphasis.

First, as to the commingling of funds, Fusion's R. Mem. 6-8 demonstrates that Hams have converted what both parties had labeled as a shell corporation--Millenium, originally available as a merger partner that would enable the other partner to become

6

a public corporation--into a shell game.  Although what follows should not be misunderstood as minimizing the other damning factors covered in Fusion's R. Mem. 6-9, perhaps the most egregious evidence of abuse of the corporate form is Hams' appalling conduct in connection with their purported accrued salaries.  During an extended period when Millenium lay totally fallow, carrying on no business operations at all and obviously generating no income, Richard continued to "receive" an annual salary that began at $300,000 in 2003 and increased 10% each year, while Carla's corresponding numbers began at $105,000 and also increased by 10% annually.  That unjustified pair of levies led to a purported accrual at December 31, 2006 of over $1.3 million in claimed corporate liability for such unpaid compensation, plus payroll tax liabilities of nearly $100,000 (no figures are available for the years since, because Millenium has no books)--but the result is that if Hams could ever succeed in marketing Millenium, those totally unjustifiable and scandalously large accrued amounts would operate to enrich the self-dealing Hams in a manner and to an extent that no objective approach could ever warrant.  Talk about a shell game!!

As for the acknowledged fact of Millenium's undercapitalization, Hams not only admit that factor (at their Mem. 6) but attempt to turn it around to their advantage by stressing Millenium's attractiveness as a merger partner.  But as Fusion's
7

R. Mem. 9 points out, Millenium's original appeal in that respect stemmed from its status as a publicly-traded corporation, not because of its undercapitalization as such. And that asserted value vanished like the grin on the Cheshire Cat when the SEC delisted Millenium from the over-the-counter Bulletin Board in April 2007, so that the corporation became traded only on the over-the-counter Pink Sheets. In that lesser status, no quarterly or annual audits are required and financial information need not be made publicly available. Indeed, based on Hams' nonresponses to Fusion's discovery requests, there is no extant financial information that could be made available in any event.

Thus Millenium is not only undercapitalized but its shares are totally illiquid, so that its real-world availability as a potential merger partner is gone. That more than amply satisfies the second relevant factor.

As for the "unauthorized diversion of funds," in this instance a more accurate characterization stems from the unauthorized diversion of whatever assets Millenium might claim via the already-referred to creation of massive liabilities through the already-referred-to exorbitant accrual of salaries. That far overwhelms whatever sums Hams may have paid in to Millenium by way of asserted loans. And even more importantly, the self-dealing manner in which Hams have treated and continued to treat Millenium's acknowledged assets (principally the house

8

that is Millenium's "corporate headquarters" and that they occupy as their residence) is well set out at Fusion R. Mem. 11-12. Lastly, the failure to observe corporate formalities is not simply a matter of their having "operated" Millenium with a two-person board in violation of the corporate by-laws, but more importantly involves the already-described unfairness to Millenium (if it is to be respected as a corporation at all) of their self-dealing (see Nev. Rev. Stat. Ann. §78.140.2(d)).

In sum, it is difficult to imagine a greater "unity of interest" for corporate-veil-piercing purposes than is presented by the inextricably intertwined Hams-Millenium relationship. And that leaves for discussion only the issue whether "adherence to the corporate fiction of a separate entity would, under the circumstances, sanction a fraud or promote injustice."

On that score both <u>LCF</u>, 8 P.3d at 905 and <u>Lorenz v. Beltio, Ltd.</u>, 963 P.2d 487, 497-98 (Nev. 1998)--neither addressed in Hams' response--squarely support an affirmative answer in that respect. As Fusion's Mem. 13-14 and R. Mem. 13-14 demonstrate, it is not the earlier-understood undercapitalization of Millenium, but rather (1) Millenium's (and hence Hams') causing the Sutura deal to fail and then (2) the institution of the follow-up Nevada lawsuit against Fusion in a groundless effort to blame it for that failure, that would promote injustice (an understatement) if Fusion's current motion were unsuccessful.

It follows then that Hams cannot be allowed to render meaningless the indemnification and attorneys' fees provisions in the original Stock Purchase Agreement between Fusion and Millenium via the sleight of hand that Hams have sought to perform. There is indeed no genuine issue of material fact on the current motion, and so Fusion is entitled to a judgment against Hams (jointly and severally) as a matter of law on the Count I alter ego claim. And that in turn calls for a comparable summary judgment on Counts II and III--a remedy granted against Millenium in the Opinion. This Court so orders.

That appears to leave only two items of business unresolved in this litigation: (1) the disposition of Millenium's Counterclaim against Fusion and (2) the determination of Fusion's damages. This action is set for a status hearing at 8:45 a.m. August 5, 2009 to discuss both subjects, looking to the future entry of a final judgment order in the case as a whole. What follows sets the background for that status hearing.

As to the first of those remaining items, on March 3, 2009 Fusion filed a motion for summary judgment, together with all necessary supporting materials, only to have that sidetracked by the prompt withdrawal of Millenium's (and Hams') then counsel. This Court granted further time for new counsel to enter the case and bring themselves up to speed, but nothing further has been done on that subject while the parties were doing battle on the

just-resolved Rule 56 motion against Hams.  Frankly, in light of what has gone before, it is really difficult to comprehend how Millenium could mount a defense that would leave its Counterclaim viable, but the parties can address that during the status hearing.

As for the second remaining issue, at this point the combination of the Opinion and this opinion has established identical liabilities on the part of each of the Hams and Millenium--joint and several obligations running to Fusion.  In that respect the parties should be prepared to discuss the quantification of that liability.

_____
Milton I. Shadur
Senior United States District Judge

Date:  July 28, 2009